UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Alexandra Portes

    v.                                      Civil No. 25-cv-030-LM-TSM
                                         Opinion No. 2025 DNH 134 P

Polaris Industries, Inc., et al

## **O R D E R**

Plaintiff Alexandra Portes brings this suit against defendants Polaris Industries, Inc., Polaris Experience, LLC (collectively, "Polaris"), and Winter Fun, Inc. ("Winter Fun"), alleging that they are liable for injuries Portes suffered during a snowmobile ride. Polaris moves to compel arbitration under the Federal Arbitration Act ("FAA"), pursuant to an arbitration clause contained in a contract between the parties. Portes objects. For the following reasons, Polaris's motion (doc. no. 17) is granted.

### **STANDARD OF REVIEW**

District courts apply the summary judgment standard to decide motions to compel arbitration under the Federal Arbitration Act. Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021). A movant is entitled to arbitration where it shows no "genuine issue of fact exists regarding the parties' agreement to arbitrate." Id. at 175-76. In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Id. at 175.

## BACKGROUND[1]

On January 22, 2022, Alexandra Portes arrived in Gorham, New Hampshire for a scheduled "Polaris Adventures" snowmobile ride. Polaris provides guided snowmobile tours for paying customers. Portes had reserved and paid for her snowmobile ride online in advance of her arrival. At the time she made (and paid for) the reservation, she was not provided with any written contract or document to review but was instructed to arrive fifteen minutes before her scheduled ride.

Upon arriving in Gorham, she was presented with a "Product Rental Agreement" (hereinafter "Agreement") on a tablet device. The Agreement indicated that she was renting the snowmobile from defendant Winter Fun, an "authorized Outfitter" for Polaris. This was the first time Portes was asked to review and sign a contract in connection with the snowmobile rental. The Agreement stated that no refunds would be provided unless the renter cancelled her reservation "at least 48 hours in advance" of the scheduled reservation. Thus, by the time she arrived, her payment had become non-refundable.

The Agreement contains several clauses that purport to waive certain rights, including provisions that limit the remedies available to both parties, several choice-of-law provisions requiring the application of Minnesota law, a forum selection clause requiring any legal disputes to be heard in the city of Minneapolis,

---

[1] The following facts are taken from Portes's complaint (doc. no. 1), from the parties' contract (doc. no. 17-2), and from Portes's affidavit in support of her objection to Polaris's motion (doc. no. 22-1). The facts detailed herein, as they pertain to the motion to compel arbitration, are not in dispute.

and a general release of claims and waiver of liability. As is most relevant here, the Agreement contains a section entitled "Dispute Resolution" which states as follows:

> **Arbitration**. Any dispute arising out of, related to, or in connection with this Agreement shall be solely and finally settled by arbitration in Minnesota in accordance with the United States Arbitration Act (9 U.S.C. [ ]§1), the JAMS Comprehensive Arbitration Rules & Procedures and the JAMS Recommended Arbitration Discovery Protocols for Domestic, Commercial Cases. <u>The arbitrator will apply Minnesota law and will have the power to decide all issues relating to the Dispute, including, without limitation, the validity, enforceability, and scope of this provision, the arbitrability of any issue, and the jurisdiction of the arbitrator.</u> The arbitrator will have the power to award all remedies at law, to order specific performance of this Agreement, and to hear and decide any and all issues or claims through summary judgment or summary disposition motions without requiring a hearing. . . .

Doc. no. 17-2 at 7. The underlined portion of this provision is hereinafter referred to as "the Delegation Clause."

The Agreement required Portes's signature, and that she check several boxes. The first of these checkboxes asked, in capital letters, for Portes to affirm:

> I HAVE READ THIS AGREEMENT AND RIDE WAIVER CAREFULLY AND IN ITS ENTIRETY, INCLUDING EXHIBITS A-D (MOST NOTABLY, THE RIDE WAIVER), AND UNDERSTAND I AM WAIVING CERTAIN LEGAL RIGHTS BY SIGNING THIS AGREEMENT.

<u>Id.</u> at 10. After being presented with the Agreement, Portes checked the box next to this clause, signed the Agreement, and provided her driver's license, which was scanned into the Agreement. <u>See id.</u> At some point during her ride, Portes's snowmobile crashed, and she suffered injuries.

On January 15, 2025, Portes filed suit against Polaris and Winter Fun, alleging claims of negligence, breach of contract, strict liability and consumer protection violations,[2] and seeking damages for her injuries. Polaris moves to compel arbitration of Portes's claims pursuant to the Agreement's arbitration clause.[3]

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1, et seq., "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." Preston v. Ferrer, 552 U.S. 346, 349 (2008). "The Supreme Court has made clear that where the parties have agreed to arbitrate, the FAA requires 'courts to rigorously enforce arbitration agreements according to their terms.'" Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 27 (1st Cir. 2021) (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013)). It is well settled that arbitration is a matter of contract, and basic state-law contract principles govern agreements to arbitrate. Id. at 27 n.6; see, e.g., Toth v. Everly Well, Inc., 118 F.4th 403, 410-11 (1st Cir. 2024).

---

[2] Specifically, Portes alleges against each defendant the following counts: negligence and negligent misrepresentation related to the quality of the training and equipment provided to Portes (Count I); strict liability related to defects in the same equipment (Count II); breach of the warranties of merchantability and fitness (Count III); and violations of the New Hampshire Consumer Protection Act, RSA chapter 358-A, for unfair and deceptive practices in falsely representing its equipment and training as meeting a particular standard and quality (Count IV).

[3] Winter Fun joins Polaris's motion and consents to arbitration of Portes's claims against it. Doc. no. 19.

Many commercial contracts contain broadly worded provisions that delegate to the arbitrator even threshold questions "relating to scope, validity, and enforceability of an arbitration agreement." Toth, 118 F.4th at 410; see, e.g., Exothermics, Inc. v. Ernst & Young U.S. LLP, 765 F. Supp. 3d 97, 101 (D.N.H. 2025) (sending gateway question of whether particular dispute is arbitrable to the arbitrator). To prove that the parties intended to delegate gateway questions to an arbitrator, the moving party must show that the contract "evinces a clear and unmistakable intent" to do so. Bossé, 992 F.3d at 27. A contract evinces such intent where it, for example, incorporates the rules of the American Arbitration Association ("AAA"). Id. at 29-30.[4]

Here, the Agreement does more than simply incorporate the rules of the AAA. The Agreement contains its own delegation clause with language at least as broad as the AAA rules. In material part, the Delegation Clause states: "The arbitrator will . . . have the power to decide all issues relating to the Dispute, including, without limitation, the validity, enforceability, and scope of this provision, the arbitrability of any issue, and the jurisdiction of the arbitrator." Doc. no. 17-2 at 7.

---

[4] The AAA rules contain the following delegation clause:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a) (2022).

5

The Delegation Clause sends to the arbitrator all disputes, including those concerning the validity, enforceability and scope of the arbitration clause, the arbitrability of any question, and the jurisdiction of the arbitrator. Thus, defendants easily satisfy their burden to show the Agreement contains "clear and unmistakable evidence" of intent to delegate.[5] Bossé, 992 F.3d at 27.

Once the proponent of arbitration establishes the existence of clear and unmistakable intent to delegate, as is the case here, the opposing party may still attempt to stave off arbitration in two ways. See Toth, 118 F.4th at 410. First, the court may still consider challenges to the "formation of the arbitration agreement," e.g., the arbitration agreement lacks mutual assent or consideration. Bossé, 992 F.3d at 28. Likewise, the court may consider challenges to "the specific validity of the delegation provision"—e.g., that the delegation provision is itself unconscionable or was fraudulently induced. Toth, 118 F.4th at 410; Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 382-83 (1st Cir. 2011). In her objection, Portes challenges only the formation of the arbitration agreement. Portes does not mount a specific challenge to the delegation clause.[6]

---

[5] Portes does not challenge that the language of the Delegation Clause constitutes "clear and unmistakable intent" to delegate.

[6] Portes challenges the validity of the contract as a whole (e.g., the Agreement is "unconscionable" and an impermissible "contract of adhesion") and to specific aspects of the contract separate from the arbitration clause (e.g., the forum selection and choice-of-law clauses are invalid under state law). These challenges have no legs in a case where there is a delegation clause; they must be decided by the arbitrator. See, e.g., Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70-76 (2010); Toth, 118 F.4th at 409 (explaining that a challenge to "another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement

In her challenge to the arbitration clause, Portes argues that it lacks two required elements of a contract: consideration and mutual assent. See Bell Air Assocs. v. N.H. Dep't of Health & Hum. Servs., 158 N.H. 104, 107 (2008); Vermillion State Bank v. Tennis Sanitation, LLC, 969 N.W.2d 610, 628 (Minn. 2022). Regarding consideration, Portes contends that any contract between the parties was created at the time she made the reservation and paid Polaris, not when she signed the Agreement. She further contends that Polaris failed to provide additional consideration in exchange for her assent to be bound by the terms of the Agreement. The First Circuit has, however, already considered and rejected this same argument. Toth, 118 F.4th at 413 n.6. Toth held that mutual promises to arbitrate all disputes create "bilateral obligation[s] that independently constitute valid consideration." Id. Although Toth applied Massachusetts law, jurisdictions across the First Circuit and the country recognize the principle that mutual promises to be bound by the terms of a contract constitutes adequate consideration, including New Hampshire and Minnesota. See, e.g., Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 475 (1st Cir. 2011) (applying Massachusetts law); Rosen v. Genesis Healthcare, LLC, Civ. No. 20-cv-1059-PB, 2021 WL 411540, at *4 (D.N.H. Feb. 5, 2021) (applying New Hampshire law); Swanson v. Priest, 95 N.H. 64, 66-67 (1948) (applying New Hampshire law); McMurray v. AT&T Mobility

---

to arbitrate" (quoting Rent-A-Center, 561 U.S. at 70-71)); Medika Int'l, Inc. v. Scanlan Int'l, Inc., 830 F. Supp. 81, 87 (D.P.R. 1993) (sending choice-of-law dispute to arbitration); Richard C. Young & Co., Ltd. v. Leventhal, 389 F.3d 1, 5 (1st Cir. 2004) (sending forum-selection dispute to arbitration).

Servs., LLC, Civ. No. 21-414 (DWF/DTS), 2021 WL 3293540, at *5 (D. Minn. Aug. 2, 2021) (applying Minnesota law); Soto v. State Indus. Prods., Inc., 642 F.3d 67, 76 (1st Cir. 2011) (applying Puerto Rico law and listing cases to the same effect in Tennessee, Pennsylvania, Wisconsin, Illinois, and South Carolina). Accordingly, Portes's argument regarding lack of consideration for the arbitration clause fails.

Portes next argues that the arbitration clause lacks mutual assent—in that she never agreed to its terms. She argues that the arbitration clause was not communicated to or discussed with her when she paid, that Polaris instructed her to arrive about fifteen minutes before the snowmobile ride was to begin, that she requires additional time to review English-language contracts because her first language is Spanish, and that her money was nonrefundable as of the time she would have first learned of the arbitration clause.

Even construing these facts in her favor, Portes's challenge fails as a matter of law. Both New Hampshire and Minnesota law utilize an "objective" standard of mutual assent. E.g., Int'l Bus. Machs. Corp. v. Khoury, 170 N.H. 492, 501 (2017); SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp., 795 N.W.2d 855, 864 (Minn. 2011). Thus, whether Portes was subjectively aware of the Delegation Clause is irrelevant. What matters is whether her objective conduct indicates a manifestation of assent to a contract's terms. See Khoury, 170 N.H. at 501 ("[U]ndisclosed meanings and intentions are immaterial in arriving at the existence of a contract between the parties." (alteration in original) (quoting Simonds v. City of Manchester, 141 N.H. 742, 744 (1997)); Speckel ex rel. Speckel

v. Perkins, 364 N.W.2d 890, 893 (Minn. Ct. App. 1985) ("The subjective intent of [the parties] is irrelevant.").

Here, the undisputed record reveals that Portes signed the Agreement, checked a box on the Agreement indicating she understood she was waiving certain legal rights, and provided the defendants with her driver's license that was scanned into the Agreement. The checked box alone could be enough to meet the objective standard of mutual assent. See Toth, 118 F.4th at 411 (holding that contracts where a party affirmatively checks a box, known as "clickwrap contracts," "usually create equivalent contractual obligations" and are "generally akin to signing a traditional pen and ink contract") (citing 1 Corbin on Contracts § 2.12 (2023)). Moreover, Portes's claim that she was unaware of the existence of the arbitration clause— either due to a lack of time to review or language barriers—does not invalidate her objective manifestations of mutual assent. See Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 20-21 (1st Cir. 2009) ("[W]hether plaintiffs actually knew of the arbitration clause in their contracts is irrelevant; that knowledge is imputed as a matter of law." (quoting Parler v. KFC Corp., 529 F. Supp. 2d 1009, 1040 (D. Minn. 2008))). For these reasons, Portes's challenges to the arbitration clause—whether based on lack of consideration or mutual assent—are not sufficient to forestall summary judgment on the motion to compel arbitration.[7]

---

[7] In an argument raised for the first time in her surreply, Portes challenges the applicability of the FAA (and the severability of arbitration and delegation clauses) to a contract in which the parties agree to be bound by a particular state's laws. The Supreme Court foreclosed this argument in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), and clarified that state law is not controlling

## CONCLUSION

Polaris's motion to compel arbitration (doc. no. 17) is granted. Polaris seeks dismissal, and no party advocates for a stay in proceedings. Therefore, this case is dismissed without prejudice.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 14, 2025

cc:   Counsel of Record

---

on questions under the FAA, "even in the context of state-law claims brought in state court." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006) (citing Prima Paint, 388 U.S. at 403-04). Thus, "state law [cannot] bar enforcement of [the FAA]." Id. (citing Southland Corp. v. Keating, 465 U.S. 1, 4-5 (1984)); accord Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010).